## Case No. 16,318.

### UNITED STATES v. SMITH.[1]

Circuit Court, E. D. Pennsylvania. Oct. 25, 1861.

INTERNATIONAL LAW—CIVIL WAR—RIGHTS OF INSURGENTS—PIRACY.

[1. A combination of citizens or subjects for the purpose of overturning a government does not become entitled to the privileges of national sovereignty until a revolution is actually accomplished.]

---

[1] [Not previously reported.]

[2. The fact that the number of insurgents in a state is so great that they carry on a civil war against its government does not entitle the government set up by such insurgents to the privileges of sovereignty.]

[3. The United States courts will treat as pirates all persons engaged in plundering vessels of United States citizens under authority of a government set up by insurgents against whom a civil war is being waged.]

[This was an indictment against William Smith for piracy.]

Geo. A. Coffey, U. S. Atty.
Furman Sheppard, for prisoner.

Before GRIER, Circuit Justice, and CADWALADER, District Judge.

GRIER, Circuit Justice (charging jury). The defendant, William Smith, whom you have in charge, is indicted for the crime of piracy. It is proper that the court should give you a definition of it, so that you may apply the testimony to the case. It is briefly defined as "robbery on the high seas." [U. S. v. Smith] 5 Wheat. [18 U. S.] 153, Append. As the sea belongs to no nation, but to all nations, and as the offense is usually committed without the particular municipal jurisdiction of any nation, it is an offense against the law of nations, and may be punished by any nation, whether committed by natives or foreigners. Pirates or robbers on the ocean are called "hostes humani generis." But every nation has the offense and punishment defined by its own municipal laws. Of the several acts of congress on this subject we need only refer to the third section of the act of 15th May, 1820 [3 Stat. 600], as the one which defines the offense as charged in the indictment. It is as follows: "Sec. 3. That, if any person shall, upon the high seas, or in any open roadstead, or in any haven, basin, or bay, or in any river where the sea ebbs and flows, commit the crime of robbery, in or upon any ship or vessel, or upon any of the ship's company of any ship or vessel, or the lading thereof, such person shall be adjudged to be a pirate: and, being thereof convicted before the circuit court of the United States for the district into which he shall be brought, or in which he shall be found, shall suffer death. And if any person engaged in any piratical cruise or enterprise, or being of the crew or ship's company of any piratical ship or vessel, shall land from such ship or vessel, and, on shore, shall commit robbery, such person shall be adjudged a pirate: and on conviction thereof before the circuit court of the United States for the district into which he shall be brought, or in which he shall be found, shall suffer death: Provided, that nothing in this section contained shall be construed to deprive any particular state of its jurisdiction over such offences, when committed within the body of a county, or authorize the courts of the United States to try any such offenders, after conviction or acquittance, for the same offence, in a state court."

First the offense is robbery, a crime defined by the common law as "the feloneous and violent taking of any money or goods from the person of another, putting him in fear." The epithet "feloneous" has reference to the intention, which must be "animo furandi" for the purpose of stealing or appropriating the thing taken. There need be no absolute personal violence used, if there be threats and the person robbed submits peaceably through fear of violence. When the robbery is committed by several acting together, all are equally guilty. Nor need the money or goods taken be on the person, provided they be in the possession of the owner, such as household goods, or cattle in the field, or, as in this case, "upon a vessel, and in lading" as defined in the act. Third. The robbery must be committed on the "high seas," &c.

If you believe the testimony (which I need not repeat to you), the charge thus defined appears to be fully established. In fact, if the case rested here, the learned counsel for the defendant seem to admit that they could not avoid a conviction. But it is contended that, though property may be taken "by violence on the high seas," yet if it be done by authority of a state in prosecution of a war against another state, the persons acting under such an authority are not guilty of piracy, and cannot be punished as such. Of this there is no doubt; for piracy has been defined as "depredation on or near the sea without authority from any prince or state." 6 Bac. Abr. 163. Those having such authority are treated as enemies, or as having the privileges of enemies in open war. Thus Turks and Algerines, though acting as free-booters on the ocean (according to Sir Lionel Jenkins), could not be treated as pirates, because they acted under a commission from states with whom the government had treaties, and had acknowledged to be states, in the great family of nations. But it does not follow that every band of conspirators who may combine together for the purpose of rebellion or revolution or overturning the government of which they are citizens or subjects, become ipso facto a separate and independent member of the great family of sovereign states. A successful rebellion may be termed a revolution; but until it becomes such it has no claim to be recognized as a member of the family, or exercise the rights or enjoy the privileges consequent on sovereignty. "When a civil war rages in a foreign nation, or in our own, and one part separates from the old established government, and erects itself into a distinct government, the courts of the United States must view such contested government as it is viewed by the legislative and executive departments of the government of the United States." Every government is bound, by the law of self-preservation, to suppress insur-

rections; and the fact that the number and power of the insurgents may be so great as to carry on a civil war against their legitimate sovereign will not entitle them to be considered a state. The fact that a civil war exists for the purpose of suppressing a rebellion is conclusive evidence that the government of the United States refuses to acknowledge their right to be considered as such. Consequently this court, sitting here to execute the laws of the United States, can view those in rebellion against them in no other light than as traitors to their country, and those who assume by their authority a right to plunder the property of our citizens on the high seas as pirates and robbers.

I do not think it necessary, on the present occasion, to follow the wide range of questions which have been drawn into discussion. Of the plea of duress I need only say that I am sorry indeed that there is not some evidence to support it. But the dispensation of mercy is not with us. Your duty is to render a true verdict, and that of the court to pronounce the sentence of law thereon. Whether, under all the circumstances of the case, a proper policy might not suspend its execution, is a question for the executive to decide.